**UNITED GEOPHYSICAL CORPORATION,**
Appellant,

v.

**Donald E. CULVER, Appellee.**

No. 375.

Supreme Court of Alaska.

July 27, 1964.

D. A. Burr, Burr, Boney & Pease, Anchorage, for appellant.

Donald E. Culver, in pro. per.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The appellant, United Geophysical Corporation, questions the sufficiency of the evidence to support the verdict and the judgment in this case.

On December 18, 1958, the appellee, Culver, and his wife leased certain lands on the Kenai Peninsula to Don R. Link "for the purpose of investigating, exploring, conducting geophysical operations, prospecting and drilling for and producing oil, gas, sulfur and all other minerals of every kind and character." Link thereafter assigned the lease to Halbouty Oil Company.

During 1959 Halbouty gave permission to Union Oil Company of California to "shoot"[1] certain seismographic lines across appellee Culver's lands above mentioned. This was in connection with certain seismographic and other related geophysical work which Union was having done on leasehold interests of its own on the Kenai Peninsula. This work was all being done for Union by its employee, the appellant, United Geophysical Corporation.

In the course of performing such seismographic work on the appellee's land, the appellant cut and cleared off the standing timber from an area about 300 feet in length and 150 feet in width so that the space could be utilized as a landing field for helicopters used by the appellant in its operations. Suit was then instituted by the appellee to recover damages in the sum of $1,100 for the alleged wanton and wrongful destruction of his timber.

In answer to three special interrogatories submitted to it by the trial court, the jury found that the appellant did not cut down the appellee's timber wantonly but that it did overcut by forty percent the trees which it was reasonably necessary to clear off for the conduct of its geophysical operations

---

1. "The term 'shooting' derives from the setting off of explosions in the ground. The shock waves from these explosions are recorded by a seismograph, and from these records a contour map can be made." Williams and Meyers, Oil and Gas Terms, 229 (1957).

upon the appellee's land. The jury also returned a general verdict for the appellee in the sum of $1,100.

The appellee submitted a formal judgment in his favor for $1,100, but the appellant moved for entry of a judgment consistent with the answers of the jury to the special interrogatories, that is, a judgment for the appellee for forty percent of $1,100 or $440. The trial court granted the appellant's motion and entered judgment accordingly for appellee Culver in the amount of $440. United Geophysical Corporation has appealed on the single issue that there is not even a scintilla of evidence in the record to support the jury's finding that the appellant cut down more trees than was reasonably necessary for the conduct of its geophysical operations upon the appellee's land.

Appellant's counsel acknowledges it to be a rule of law that an appellate court will not disturb a finding of fact by the jury unless it is unsupported by any evidence or is the result of erroneous conclusions drawn from the undisputed facts.[2] However, we cannot agree with the appellant that there is no evidence in this case to support the verdict and judgment entered below.

The appellant used the Sikorsky type helicopter, model S–55, in its operations in the Kenai Peninsula and across appellee's lands. The main rotor diameter of the S–55 is fifty-two feet and the total length of its main and tail rotor combination is just under sixty-five feet. On take-off with a legal gross load it will not rise vertically but requires forward flying speed like ordinary aircraft. Wheeler, a pilot assigned to fly for the appellant and who had several times landed and taken off in an S–55 helicopter upon the appellee's property, testified as follows:

"Q What is the distance, if you know, at approximately sea level and under the conditions that existed at Longmire Lake[3] where you operated, what is the minimum area, in your opinion, that would be satisfactory for the operation of an S–55 helicopter?

"A Well, I set up a minimum of at least a 400 foot run and 100 foot width to allow a take off distance for the average height of the timber that was in that country to clear it safely.

\* \* \* \* \* \*

"Q In what direction did you take off on the four or five times that you landed in this area [Culver's property]?

"A Well, I departed to the south—generally to the southwest which was towards the open lake which didn't impose obstacle for take-off."

Wheeler's testimony regarding the cleared space required for the operation of an S–55 helicopter in the vicinity of the appellee's property was corroborated by another witness called by the appellant, who stated when asked what landing area was required for an S–55: "About—it depends a lot on tree height at—about 100 by 400."

It is quite evident from the testimony of these two witnesses, which was uncontradicted, that the appellant had cleared out a helicopter field which was fifty feet wider than was reasonably necessary under the circumstances. In other words, it had overcut the area it needed by fifty percent. We find this to be sufficient evidence to sustain the jury's finding and the judgment based thereon that the appellant had cut down forty percent more trees than was reasonably necessary to conduct geophysical operations on the appellee's property. It is true that the appellant

2. Counsel cites us to Merrill v. Merrill, 368 P.2d 546 (Alaska 1962); Esso Standard Oil Co. v. Stewart, 190 Va. 949, 59 S.E. 2d 67, 18 A.L.R.2d 1319 (1950); Peasley v. White, 129 Me. 450, 152 A. 530, 73 A.L.R. 1017 (1930).

3. The area cleared by the appellant upon the appellee's lands bordered to the south upon Longmire Lake.

had taken only 300 feet of length where it would ordinarily have required a "run of 400 feet," [4] but that fact did not entitle it to take as extra width what it did not need for length.

Judgment affirmed.

---

4. A full 400 feet of runway on the ground appears to have been considered unnecessary by the appellant in this case because of the advantage it had in being able to extend its take-off over the open lake adjacent to the clearing. We are not deciding in this case the question of whether or not the lease provision carried with it the right to cut timber to clear a helicopter field, since that issue is not before us.